IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| TIFFANY ADAMS,<br><br>      Plaintiff,<br><br>  v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>      Defendant. | CIVIL ACTION NO.: 5:22-cv-44 |

**REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Janet Mahon ("the ALJ" or "ALJ Mahon") denying her claim for Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision. Doc. 15 at 15. Defendant asserts the Commissioner's decision should be affirmed. Doc. 18 at 2. I **RECOMMEND** the Court **AFFIRM** the ALJ's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**BACKGROUND**

Plaintiff filed an application for Supplemental Security Income on February 18, 2020. R. 22.[1] On September 22, 2021, ALJ Mahon held a hearing, at which Plaintiff, who was represented by counsel, appeared and testified via telephone. Id. David Jackson, a vocational expert ("VE"), also appeared at the hearing. Id. ALJ Mahon denied Plaintiff's claims after the

---

[1] A transcript of the entire proceedings before the Social Security Administration appears at Document Number 14. The transcript includes paginated Record cites. Docs. 14-1 to 14-9. The undersigned refers to the transcript using these same Record cites.

hearing in a decision issued on October 7, 2021. R. 22–39. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 3.

Plaintiff, born on August 23, 1980, was 39 years old at the time of the alleged onset date and 41 years old at the time of the ALJ's decision in 2021. R. 37. She has a high school education and attended college but did not graduate. She completed dental assistant training in July 2018. R. 25. Plaintiff's past relevant experience was her work as a dental assistant. R. 37.

## DISCUSSION

### I.    The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the

claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she can adjust other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff did not engage in substantial gainful activity since her alleged onset date, February 18, 2020. R. 24. At step two, ALJ Mahon determined Plaintiff had the following severe impairments: osteoarthritis; skeletal system sarcoma; and migraines. Id. Notably, the ALJ did not mention any mental impairments

at step two.[2]  At the third step, the ALJ determined Plaintiff's impairment or combination of impairments did not meet the severity of a listed impairment.  R. 25.  Also at step three, the ALJ considered all of Plaintiff's mental impairments and determined they did not meet the criteria of a listed impairment.  Id.  The ALJ considered whether the "paragraph B" criteria were satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning.  The ALJ determined Plaintiff has only one moderate limitation and three mild limitations, thus not satisfying the "paragraph B" criteria.  R. 26.  At step four, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work, with the ability to lift 20 pounds occasionally and 10 pounds frequently; sit for 6 hours; stand or walk for up to 6 hours in an 8-hour workday, except Plaintiff is limited to occasional fingering bilaterally; occasional climbing, no climbing of ropes, ladders, or scaffolds; and occasional bending, kneeling, stooping, crouching, and crawling.  R. 27.  Plaintiff is limited to performing "simple jobs"[3] and must avoid even moderate exposure to hazards, loud noises, and vibration.  Id.  The ALJ determined Plaintiff could not perform her past relevant work.  R. 37.  The ALJ concluded at the fifth and final step Plaintiff could perform jobs, such as a courier, ticket taker, cafeteria

---

[2]  Although the ALJ did not discuss mental impairments at step two, the parties appear to agree the ALJ did conclude Plaintiff suffered from mental impairments.  See Doc. 15 at 2 n.2 ("[T]he decision obviously found that Plaintiff had more than minimal mental impairments . . . .").  It is a reasonable assumption the ALJ concluded Plaintiff had mental impairments since the ALJ discussed those impairments at length during her step three analysis.

[3]  Both parties treat "simple jobs" as analogous to "unskilled work," and it appears the ALJ and the vocational expert did, too.  The following mental activities are generally required for engaging in unskilled work: understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  SSR 96-9p, 1996 WL 374185, at *9 (S.S.A. July 2, 1996).  The ALJ discussed almost identical mental activities when discussion Plaintiff's mental limitations in the RFC portion of the decision.

attendant, food and beverage order clerk, charge account clerk, and callout operator, all of which exist in significant numbers in the national economy.  R. 38.

## II.     Issues Presented

Plaintiff asserts the ALJ's RFC determination is unsupported by substantial evidence because the ALJ's mental RFC determination, limiting Plaintiff to "simple jobs," failed to adequately capture all of Plaintiff's mental limitations.

## III.    Standard of Review

It is well established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

5

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), overruling by statute on other grounds recognized by Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

### IV.     The ALJ's RFC Assessment Is Supported by Substantial Evidence

Plaintiff argues the ALJ's RFC determination, which limits Plaintiff to "simple jobs," is not supported by substantial evidence because the simple-jobs limitation does not fully account for Plaintiff's mental limitations.  Doc. 15 at 2.  Specifically, Plaintiff contends opinions from Dr. Barksy and the State Agency show Plaintiff had more severe mental limitations, and the ALJ found those opinions to be persuasive.  Plaintiff contends remand is required because the omission of these additional mental limitations rendered the ALJ's RFC determination invalid and, consequently, the VE's testimony was based on that same faulty RFC.  The Commissioner argues the ALJ did not err because substantial evidence supports the ALJ's decision and the ALJ properly considered the relevant evidence.  Doc. 18 at 6.  For the reasons set forth below, I conclude the ALJ's RFC determination is supported by substantial evidence, and Plaintiff's challenge fails.  I first describe Dr. Barksy's opinions, the State Agency's determinations, and the ALJ's analysis of Plaintiff's mental limitations.

### A. Dr. Barksy's Opinions

The State Agency, Disability Determination Services ("DDS"), ordered Plaintiff to Dr. Susana Barksy, a consultative examiner, for an evaluation. Dr. Barksy examined Plaintiff on July 1, 2020, and provided a report with her opinions. R. 860–64. Dr. Barksy diagnosed Plaintiff with "major depressive disorder, moderate" and "generalized anxiety disorder." R. 864. Dr. Barksy stated:

> [Plaintiff] appears able to follow and understand simple directions and instructions. She appears able to perform simple tasks independently. She appears mildly limited in her ability to maintain attention and concentration for short periods of time. She may have increased difficulty with more extensive tasks. She appears limited in her ability to maintain a regular schedule. She appears mildly limited in her ability to learn new tasks. She appears limited in her ability to relate to others adequately. She appears able to make appropriate decisions for herself. She appears limited in her ability to deal with stress appropriately.

R. 863. Dr. Barksy concluded Plaintiff appeared able to manage her own funds effectively. Dr. Barksy recommended Plaintiff should undergo an evaluation with a psychiatrist to assess Plaintiff's medication regimen and Plaintiff should attend ongoing outpatient individual psychotherapy to develop coping skills and to address psychiatric symptoms. R. 864. Dr. Barksy concluded Plaintiff's prognosis was "fair," given her circumstances. Id.

### B. The State Agency Opinions

In July 2020, the State Agency, DDS, made an initial determination Plaintiff was not disabled. R. 106–119. The DDS initial determination considered information from agency consultants, Dr. Barksy's findings and report, and various medical records. In the initial determination, DDS identified "depressive, bipolar and related disorder" and "anxiety and obsessive-compulsive disorders" as Plaintiff's medically determinable impairments. These impairments were both identified as "severe" early in the report, but the report later clarified the impairments were not severe. R. 112–13. DDS determined the medical evidence did not support

Plaintiff's reported symptoms, and, therefore, DDS concluded these impairments did not meet a listing.  R. 113.  DDS determined Plaintiff could perform light work and was not limited to unskilled work.  R. 118.  Ultimately, during the initial determination, DDS concluded Plaintiff was not disabled.  Id.  In its explanation of its decision, DDS stated Plaintiff was "capable of understanding and carrying out instructions, meeting general production and quality standards, and reporting to work on a regular and continuing basis."  R. 121.

In December 2020, DDS reconsidered its initial determination.  R. 124–48.  DDS considered several medical records, reports from Plaintiff, and Dr. Barksy's findings and report.  Again, DDS identified "depressive, bipolar and related disorder" and "anxiety and obsessive-compulsive disorders" as Plaintiff's medically determinable impairments, initially identified the impairments as "severe," but then clarified the impairments were not severe.  R. 135–36.

The DDS reconsideration included a psychiatric review technique ("PRT") analysis.  In that analysis, DDS identified the following limitations in the Paragraph B criteria: (1) understand, remember, or apply information (no limitation); (2) interact with others (mild limitation); (3) concentrate, persist, or maintain pace (mild limitation); and (4) adapt or manage oneself (no limitation).  R. 135.  DDS concluded Plaintiff's mental impairments could produce Plaintiff's symptoms, but the medical evidence did not support Plaintiff's reported symptoms.  DDS concluded Plaintiff's mental impairments were not severe and did not meet a listing.  R. 136.

However, at the reconsideration level, DDS explained recent treatment notes indicated Plaintiff had an "exacerbation of mental health symptoms" and, therefore, she was only capable of performing simple, routine, and repetitive tasks.  R. 136.  DDS performed a mental residual functional capacity analysis.  R. 142–45.  In this analysis, DDS concluded Plaintiff had no

limitations in three areas: understanding and memory; social interactions; and adaptation. DDS concluded Plaintiff had some limitations in concentration and persistence. DDS provided further explanation for its finding about the concentration-and-persistence functional criteria. DDS explained Plaintiff had moderate limitations in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods of time, and the ability to complete a normal workday and workweek without interruptions and to perform at a constant pace without an unreasonable number and length of rest periods. R. 144. On this last point, DDS explained Plaintiff was capable of managing stress associated with simple, routine, and repetitive tasks and could "complete simple tasks for 6–8 hours in an eight hour period at an appropriate pace, and sustain this level across days and weeks." Id. Thus, DDS concluded Plaintiff could "understand, retain, and carry out simple instructions . . . consistently and usefully perform tasks on a sustained basis, with normal supervision, [] cooperate effectively with public and co-workers in completing simple tasks and transactions [and] . . . adjust to the mental demands of most new task settings." R. 145. Ultimately, at the reconsideration level, DDS determined Plaintiff was not disabled. R. 147.

### C.  The ALJ's Analysis of the Record and Plaintiff's Mental Limitations

The ALJ discussed Plaintiff's mental limitations during step three and step four. At step three, the ALJ determined Plaintiff's mental impairments did not equal a listed impairment. In making that assessment, the ALJ assessed Plaintiff's limitations in the four "paragraph B" criteria. R. 25–26. The ALJ identified the following limitations in the Paragraph B criteria: (1) understand, remember, or apply information (moderate limitation); (2) interact with others (mild limitation); (3) concentrate, persist, or maintain pace (mild limitation); and (4) adapt or manage oneself (mild). Id. In making these assessments, the ALJ cited Plaintiff's function

report, medical records, Dr. Barksy's report and findings, and the DDS initial determination and reconsideration. The ALJ explained the limitations identified at step three were not a residual functional capacity assessment, but the residual functional capacity assessment in step four reflected the degree of limitation identified in the paragraph B criteria. R. 26.

At step four, in relevant part, the ALJ determined Plaintiff was limited to performing "simple jobs." R. 27–37. The ALJ provided a lengthy description of the items she considered in reaching her RFC determination. The ALJ considered Plaintiff's disability reports, Plaintiff's hearing testimony, numerous medical records (including mental health treatment notes), the DDS determinations, and Dr. Barksy's report and findings. The ALJ provided a complete and accurate description of Dr. Barksy's report and findings and the DDS determinations. The ALJ stated her RFC determination was supported by and consistent with Dr. Barksy's opinion and the DDS determinations, and the ALJ stated she found Dr. Barksy's opinion persuasive. R. 37.

Based on these considerations, the ALJ determined Plaintiff's impairments could cause the alleged symptoms, but the claimant's statements about the intensity, persistence, and limiting effects of the symptoms were not entirely supported by the medical evidence and other evidence. R. 29. As to mental health conditions, the ALJ determined the limitations on Plaintiff's ability to function arising from these conditions were generally mild but with some moderate limitations arising from Plaintiff's migraines, vertigo, and prescribed medication. R. 34. Therefore, the ALJ concluded Plaintiff was limited to performing "simple jobs," and this limitation was fully supported by the totality of the evidence in the record. Ultimately, the ALJ determined even with the limited RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, and, therefore, Plaintiff was not disabled.

**D.      Analysis**

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to adequately capture all of Plaintiff's mental limitations when she limited Plaintiff to performing "simple jobs." Doc. 15 at 11. In support of this point, Plaintiff makes two primary arguments.[4] First, Plaintiff argues the term "simple jobs" in the RFC is too generic to account for all of Plaintiff's mental limitations. Second, Plaintiff argues the "simple jobs" limitation is not supported by substantial evidence because the evidence shows the ALJ should have imposed greater limitations in the RFC. I address each argument.

At the outset, I note the ALJ used the term "simple jobs" in the RFC to mean "unskilled work." The following mental activities are generally required for engaging in unskilled work: understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. SSR 96-9p, 1996 WL 374185, at *9 (S.S.A. July 2, 1996). In discussing the basis for her RFC determination, the ALJ relied on sources that stated Plaintiff is able to: "follow and understand simple directions and instructions"; "perform simple, routine and repetitive tasks"; and "understand, retain, and carry out simple instructions." The ALJ also noted Plaintiff "could consistently and usefully perform tasks on a sustained basis, with normal supervision and can cooperate effectively with public and co-workers in completing simple tasks and transactions." The ALJ also noted Plaintiff "could adjust to the mental demands of most new task settings." All of the ALJ's observations and the sources cited align with the mental

---

[4]     Plaintiff's arguments are somewhat unclear, but I have made every effort to identify and address each argument raised. I analyze Plaintiff's arguments in terms of their analytical priority, not the order the arguments are presented in Plaintiff's brief.

activities required for unskilled work, and, therefore it is apparent the ALJ treated "simple jobs" to mean "unskilled work." See, e.g., Corbitt v. Kijakazi, No. 2:20-CV-771, 2023 WL 2703996, at *8 (M.D. Ala. Mar. 29, 2023) (discussing requirements of unskilled work and determining ALJ's RFC limitation to "simple routine tasks" equated to "unskilled work").

Plaintiff argues the term "simple jobs" (i.e., unskilled work) is too generic. Plaintiff offers no support for this argument, and the Court is aware of none. To the contrary, when recognizing mental limitations, it is appropriate for an ALJ to use a general term, like unskilled work, to describe a mental limitation in an RFC if the claimant is not otherwise limited in performing that type of work. See, e.g., Mijenes v. Comm'r of Soc. Sec., 687 F. App'x 842, 846 (11th Cir. 2017) (finding ALJ's limiting of plaintiff's RFC to "unskilled work" sufficiently accounted for moderate difficulties in concentration, persistence, and pace); Ybarra v. Comm'r of Soc. Sec., 658 F. App'x 538, 542 (finding RFC limitation to "short, simple instructions" and "occasional contact with co-workers" accounts for the plaintiff's mental limitations). Thus, Plaintiff's first argument fails.

Plaintiff next argues the ALJ's RFC "simple jobs" limitation is not supported by substantial evidence because Plaintiff suffered from additional limitations. Plaintiff primarily points to Dr. Barksy's opinions for support. Plaintiff argues the ALJ found Dr. Barksy's opinions persuasive, but then failed to adopt limitations Dr. Barksy opined from which Plaintiff suffers. Plaintiff also argues the DDS determinations and Plaintiff's testimony about her subjective symptoms demonstrate the ALJ should have adopted a more restrictive RFC. Plaintiff's argument is unconvincing.

Even if the ALJ found Dr. Barksy's opinions to be persuasive, the ALJ was not required to adopt all of the limitations expressed by Dr. Barksy when determining Plaintiff's RFC. The

RFC is "a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 486 (11th Cir. 2012); see also Moore v. Soc. Sec. Admin, Comm'r, 649 F. App'x 941, 945 (11th Cir. 2016) (noting task of determining RFC and ability to work rests with ALJ and not a doctor).  The pertinent Regulations expressly state the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." 20 C.F.R. §§ 404.1520c(a) & 416.920c(a).  Thus, the Regulations afford the ALJ flexibility to reasonably assess the RFC.  The ALJ is not required to adopt all of a source's limitations into the RFC, even if the ALJ finds the source persuasive.  See, e.g., Hanson v. O'Malley, No. CV 323-26, 2024 WL 995952 (S.D. Ga. Jan. 22, 2024) ("[T]he ALJ does not have to wholly accept a medical opinion 'and incorporate into his RFC assessment any and all limitations that source suggests' merely because the ALJ finds that opinion persuasive.") (collecting cases).  According to the Regulations, the ALJ cannot defer or give any specific evidentiary weight to any medical opinion.  Instead, the ALJ is to examine the persuasiveness of medical opinions and formulate an RFC that is supported by substantial evidence.  Thus, the ALJ was not required to adopt all of Dr. Barksy's opinions and limitations when determining Plaintiff's RFC; the ALJ's RFC determination needs only to be supported by substantial evidence.  As with Dr. Barksy's opinions, the ALJ was not required to adopt or give any specific evidentiary weight to the DDS determinations and Plaintiff's testimony about her subjective symptoms, and the ALJ was not required to adopt any particular limitation proposed by DDS in the RFC.[5]

---

[5] As an illustration, Dr. Barksy stated Plaintiff "appears limited in her ability to maintain a regular schedule" but DDS determined Plaintiff "should be able to complete simple tasks for 6–8 hours in an eight-hour period at an appropriate pace, and sustain this level across days and weeks."  The ALJ could appropriately find portions of Dr. Barksy's opinions persuasive, without adopting every facet of those opinions into the RFC, and the ALJ could rely on the DDS determinations as well.  Here, the ALJ's RFC

Ultimately, Plaintiff has not shown the "simple jobs" limitation in the RFC determination is not supported by substantial evidence. By limiting Plaintiff to "simple jobs," the ALJ determined Plaintiff could: understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. The ALJ properly considered both the DDS determinations and Plaintiff's testimony, along with other evidence, in making her RFC determination. The ALJ relied on disability reports, Plaintiff's hearing testimony, numerous medical records (including mental health treatment notes), the DDS determinations, and Dr. Barksy's report and findings. The ALJ accurately cited to and described all of those materials. Each statement and conclusion the ALJ made in the RFC evaluation and determination is supported by ample evidence in the record.

Plaintiff, in her brief, identifies a few statements in Dr. Barksy's report, the DDS determinations, and Plaintiff's self-described symptoms that could have supported a different RFC determination by the ALJ.[6] But Plaintiff must do more than merely point to contrary

---

which did not include any limitation on the ability to maintain a regular schedule is supported by substantial evidence, even if Dr. Barksy opined Plaintiff was more limited in this one dimension.

[6]    Though, it is not clear Plaintiff has even identified a discrepancy between the DDS determinations and the ALJ's RFC determination. For example, at the reconsideration level, DDS determined, at one point, Plaintiff had a "mild" limitation in her ability to "concentrate, persist, or maintain pace," R. 135, but, at another point, stated Plaintiff was "moderately limited" in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods," R. 144. To the extent there is some inconsistency in the DDS determination, DDS clarified Plaintiff is capable of managing stress associated with simple, routine, repetitive tasks. Id. The ALJ discussed these conclusions and concluded Plaintiff could concentrate, persist, and maintain pace, so long as the employment involved "simple jobs" (i.e., unskilled work). Thus, Plaintiff has failed to show the ALJ imposed a less restrictive RFC than the limitations expressed by DDS. In fact, the RFC imposed by the ALJ largely tracks the limitations expressed by DDS.

evidence in the record. Plaintiff must show the ALJ's RFC determination is not supported by substantial evidence, and she has not done so here. See Dyer, 395 F.3d at 1210; Sims v. Comm'r of Soc. Sec., 706 F. App'x 595, 604 (11th Cir. 2017) ("[A claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). Therefore, the ALJ's decision should be affirmed.

Plaintiff also discusses the propriety of the hypothetical the ALJ posed to the VE, but the nature of Plaintiff's challenge about the hypothetical (to the extent there is a challenge) is unclear. As explained, the ALJ limited Plaintiff to "simple jobs" in the RFC at step four. At step five, the ALJ determined Plaintiff could perform jobs in the national economy that exist in significant numbers. The ALJ based her step-five conclusion on the VE's testimony in response to a hypothetical the ALJ posed during the hearing. In the hypothetical, the ALJ suggested an individual limited to "jobs where the tasks are simple." Plaintiff seems to challenge the propriety of the VE hypothetical. Plaintiff suggests the "simple jobs" limitation was substantively incorrect because Plaintiff suffered from additional mental limitations, and, therefore, use of a generic term in the ALJ's hypothetical to the VE ("jobs where the tasks are simple") was improper. Doc. 15 at 14–15 (citing authority related to the propriety of VE hypotheticals using generic terms and discussing how the improper RFC undermined the VE testimony). In other words, the erroneous RFC determination was harmful because the same RFC was used in the VE hypothetical. Thus, Plaintiff's argument about the generic term in the VE hypothetical is entirely contingent on the Court determining the RFC was erroneous. I have determined the ALJ's RFC

---

In some instances, it appears the limitations adopted by the ALJ is even more restrictive than the view expressed by DDS. For example, DDS concluded Plaintiff had no limitation in her ability to understand, remember, or apply information. The ALJ concluded Plaintiff had a moderate limitation in this area.

determination is supported by substantial evidence, so there is no need to address the VE hypothetical or Plaintiff's other arguments on the harmful effect of the RFC determination.

Alternatively, Plaintiff may intend to argue the VE testimony was flawed because the RFC used the term "simple jobs" and the VE hypothetical used a different term, "jobs where the tasks are simple." To the extent Plaintiff intends to make that argument, it would fail. The Eleventh Circuit has explained an RFC and a VE hypothetical may account for the same limitations "even if they did not use precisely the same language." Ybarra, 658 F. App'x at 542 n.5. Here, the terms used are nearly identical and there is no indication the terms did not encompass identical limitations. Thus, to the extent Plaintiff raises any challenges to the VE testimony based on the hypothetical posed by the ALJ, those challenges fail.[7]

In sum, Plaintiff has not demonstrated any error in the ALJ's use of the term "simple jobs" in articulating Plaintiff's RFC, and Plaintiff has not demonstrated the ALJ's RFC determination and overall disability determination are not supported by substantial evidence. Therefore, the ALJ's decision should be affirmed.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

---

[7]   It may be Plaintiff intended to advance another variation of the argument. Plaintiff may have intended to argue the ALJ recognized additional mental limitations in concentration and pace and the VE hypothetical should have included the simple jobs limitation and additional limitations in concentration and persistence. If so, that argument fails. The ALJ concluded the medical evidence supports Plaintiff's ability to work was unaffected when limited to simple tasks, and there is no indication Plaintiff was somehow additionally limited in concentration and pace. R. 36. Therefore, the ALJ's use of the term in the VE hypothetical was appropriate. See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, . . . limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.").

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 8th day of March, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA